OPINION
{¶ 1} Defendant-appellant Jahmal Toland appeals his conviction and sentence in the Stark County Court of Common Pleas on one count of Unlawful Sexual Conduct with a Minor a felony of the fourth degree in violation of R.C. 2907.04. The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} The appellant lived in the home of his father, his stepmother, his brother and sister, Diamond Crews, for several years beginning when the appellant was fourteen. (T. at 241). Appellant and Crews were raised as brother and sister. (T. at 165). Neither individual was informed that they were not, in fact, related until after Crews made these allegations. (T. at 182; 241).
 {¶ 3} In August of 2005, Crews accused the appellant of having sexual intercourse with her on three occasions. (T. at 147-48). When Crews' father found out about the accusation, he confronted the appellant, threw him to the ground, placed him in hand cuffs and beat him, before taking him to the Jackson Township Police Department. (T. at 269-70).
 {¶ 4} Appellant relocated to Cleveland after these allegations surfaced in August of 2005. (T. at 254). Approximately one month later appellant was confronted by three men in a car brandishing a gun. The men mentioned the victim by name. (T. at 246-47).
 {¶ 5} Detective Bobby Grizzard of the Massillon Police Department talked to appellant several times on the telephone and finally met with him in Cleveland. (T. at 235-36). Appellant confessed to one incident of sexual contact with Crews. At trial appellant testified that he confessed because he was afraid of Crews' father. (T. at 248).
 {¶ 6} Crews testified that the appellant had sex with her three times. (T. at 148). The first incident of sexual intercourse occurred when Crews was twelve and appellant was around twenty. Appellant, Crews and her two cousins were in the basement television room. Crews' two cousins fell asleep on the couch. Appellant and Crews were on the floor. Appellant got on top of Crews and pulled her shorts aside. He stuck his penis into her vagina. Crews tried to push him off but "never told him to stop."
 {¶ 7} The second incident of sexual intercourse occurred when Crews was thirteen and appellant was around twenty. Appellant and Crews were in the living room of her brother's house. Her brother's girlfriend and two children were sleeping upstairs. Crews was on one couch and appellant was on the other. Appellant came over and got on top of Crews. He started kissing Crews on her face and neck. Crews told appellant to get off her. Instead, he pulled her shorts aside and inserted his penis inside her.
 {¶ 8} The third act of sexual intercourse occurred when Crews was around thirteen and appellant was around twenty. They were watching television in the basement of their parents' house. Appellant got on top of Crews and, pulled her shorts aside and inserted his penis into her vagina.
 {¶ 9} When asked if the three incidents she had described were the only time appellant had "done anything like that," Crews described previous attempts by the appellant to touch her over and under her clothes when she was eight years old. (T. at 158). Defense Counsel did not object to these statements. (T. at 158).
 {¶ 10} Crews' mother found out about the sexual encounters in August, 2005:
 {¶ 11} "[CREWS] I told my cousin. My cousin told my aunt. My aunt told my mom and I was standing right there when she said it". (T. at 171).
 {¶ 12} Crews did not tell her parents sooner because she didn't want to get appellant in trouble. Appellant was her brother and she loved him.
 {¶ 13} During the trial, appellant's trial counsel objected to the testimony of Robin Tener, Ph.D. a clinical psychologist. The trial court excluded Dr. Tener's testimony pursuant to Evid. R. 702. Trial counsel stipulated to the admission of the psychologist's report as a joint exhibit. (T. at 200-218).
 {¶ 14} The appellant and four members of the jury pool, including Juror No. 134 are African Americans. (T. at 99-100). During the Court's questioning, Juror No. 134 asked whether this was a rape or an assault case. (T. at 39-40). Juror No. 134 also disclosed that two of his cousins had been convicted for similar charges but that this would not affect his ability to be fair and impartial. (T. at 40-41 ).
 {¶ 15} When the Prosecutor asked if anyone in the panel had any questions, Juror No. 132 asked the age of the alleged victim. (T. at 74). Juror No. 134 then inquired about the age of the appellant. (T. at 74). The Court called counsel to the bench and Defense Counsel expressed opposition to answering the question. (T. at 74-76). When Defense Counsel questioned the panel, Juror No. 134 made several comments regarding two films Counsel had mentioned during his voir dire. (T. at 86-87). At the close of voir dire, the Prosecutor moved to strike Juror No. 134. (T. at 108). Defense Counsel objected and raised the issue of purposeful exclusion based upon the juror's race. The prosecutor explained her reason for the challenge:
 {¶ 16} "[MS. WATSON] Your Honor, when he was being questioned what bothered me was that he was asking about the element of force in this case and I understand that that will be instructed later, but I think what bothered me more was he was attempting at least to ask about how old is that man, how old is this girls, as if perhaps that might make a difference to this decision, not the evidence that he would be presented with. There are two African-American individuals left on the jury as of now". (T. at 109).
 {¶ 17} The trial court found the State's reasoning "race neutral" and allowed the preemptory challenge. (T. at 108-10).
 {¶ 18} After the jury had begun deliberations, Juror No. 115 presented a note with two questions to the bailiff. (T. 303-04). Juror No. 115 was the foreperson of the jury. (T. at 308). At approximately the same time the Bailiff was informed that the jury had a verdict. (T. at 304). The Court wrote out an answer to each question, with approval of counsel, which was delivered to the jury. (T. at 306). The Court then informed Counsel that, when they indicated they had a verdict, the jury also sent a message stating that unless they were released from jury duty for the remainder of the week, they would "stall on their verdict." (T. at 306). Counsel agreed that the Court could inform the jury that they would not be needed after the verdict. (T. at 306-07). Before receiving the Court's response, the Jury indicated that it had a verdict "whether they had to come back or not." (T. at 307).
 {¶ 19} The jury found appellant guilty of one count of Unlawful Sexual Conduct with a Minor. The trial court scheduled appellant's sentencing hearing for May 17, 2006. The trial court sentenced appellant to a prison term of seventeen months and agreed to classify appellant as a sexually oriented offender.
 {¶ 20} Appellant filed a timely notice of appeal and raises the following five assignment of error for our consideration:
 {¶ 21} "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO USE A PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY FASHION.
 {¶ 22} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE STATE TO INTRODUCE TESTIMONY OF OTHER ALLEGED ACTS BY THE APPELLANT.
 {¶ 23} "III. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 24} "IV. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO JUROR MISCONDUCT.
 {¶ 25} "V. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 I. {¶ 26} In his first assignment of error, the appellant maintains that the trial court failed to conduct a proper constitutional analysis as outlined in Batson v. Kentucky (1986), 476 U.S. 79 in determining that the State was not racially motivated in excluding an African American from the jury through the use of a peremptory challenge. See, Hicks v.Westinghouse Materials Co. (1997), 78 Ohio St. 3d 95, 98.
 {¶ 27} A defendant is denied equal protection of the law guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which numbers of the defendant's race have been purposely excluded. Strauder v. W. Virginia (1880),100 U.S. 303, 305; State v. Hernandez (1992), 63 Ohio St. 3d 577; State v.Bryant (1995), 104 Ohio App. 3d 512, 516. The "equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as the defendant will be unable to impartially consider the state's case against the defendant." State v. Bryant, supra, 104 Ohio App. 3d 516;Batson v. Kentucky, supra, 476 U.S. at 89.
 {¶ 28} Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise Batson test when racial discrimination has been alleged in opposition to a peremptory challenge." Hicks v. Westinghouse Materials Co., supra,78 Ohio St. 3d at 99.
 {¶ 29} In Hicks, supra, the Ohio Supreme Court set forth theBatson test as follows:
 {¶ 30} "The United States Supreme Court set forth in Batson the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently `discriminating' device, permitting `those to discriminate who are of a mind to discriminate'. State v. Hernandez
(1992), 63 Ohio St. 3d 577, 582, 589 N.E. 2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S. Ct. 279, 121 L. Ed. 2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, Batson at 96-97,106 S. Ct. at 1723, 90 L. Ed. 2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation `related to the particular case to be tried.' Id at 95, 106 S. Ct. at 1724,90 L.Ed. 2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation `need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S. Ct. at 723,90 L. Ed. 2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion on the basis of race. Hernandez v. New York (1991), 500 U.S. 352, 363,111 S. Ct. 1859, 1868, 114 L. Ed. 2d 395, 409. 78 Ohio St. 3d. 98-9.
 {¶ 31} Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem (1995),514 U.S. 765, 767-768, 115 S.Ct. 1769. (per curiam); Rice v. Collins (2006),546 U.S. 333, 126 S.Ct. 969, 973-74.
 {¶ 32} Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. Purkett v.Elem (1995), 514 U.S. 765, 766-767, 115 S. Ct. 1769, 1770. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768,115 S. Ct. at 1771. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed.Hernandez v. New York, 500 U.S. at 365, 111 S. Ct. at 1869; State v.Nash (August 14, 1995), Stark County Court of Appeals, Case No. 1995 CA 00024. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768,115 S.Ct. 1769; Rice v. Collins, supra at 126 S.Ct. 974.
 {¶ 33} It is irrelevant how many minority jurors remain on the panel if even one is excluded on the basis of race. State v. Bryant, supra,104 Ohio App. 3d 512; State v. Tuck 80 Ohio App 3d 721, 724(Batson, applicable even if there is only one African-American juror on the panel); Jones v. Ryan (CA. 3, 1993), 987 F. 2d 960, 972; UnitedStates v. David (C.A. 11, 1986), 803 F. 2d 1567.
 {¶ 34} On direct appeal in federal court, the credibility findings a trial court makes in a Batson inquiry are reviewed for clear error.Hernandez v. New York, 500 U.S. 352, 364-366, 111 S.Ct. 1859,114 L.Ed.2d 395 (1991) (plurality opinion) (holding that evaluation of a prosecutor's credibility "lies `peculiarly within a trial judge's province' "). Rice v. Collins, supra at 126 S.Ct. 974.
 {¶ 35} In the case at bar, the trial court accepted appellant's prima-facie argument that the prosecutor's use of a peremptory challenge to exclude Juror No. 134 was purposefully discriminatory, and directed the prosecutor to explain her reasons for the peremptory strike.Hicks v. Westinghouse, supra, 78 Ohio St. 3d at 100; State v.Hernandez, supra, 63 Ohio St. 3d at 583; Hernandez v. New York, supra;State v. Nash, supra.
 {¶ 36} The prosecutor responded that she was concerned with Juror No. 134's questions concerning the ages of the alleged victim and the appellant, and the juror's question concerning the use of force. (T. at 109).
 {¶ 37} A review of the record establishes that Juror No. 134 also indicated that he had two cousins who had served time for charges involving sexual conduct. (Id. at 40). Juror 134 also engaged defense counsel in a discussion concerning reasonable doubt and how jurors can ignore that doubt and still convict the accused, as in the movie To Kill a Mockingbird. (T. at 86-87).
 {¶ 38} "The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying Batson". Rice v. Collins, supra at 126 S.Ct. at 977. ( Breyer, J., concurring).
 {¶ 39} We do not find that the dismissal of Juror No. 134 was clearly erroneous. We find that the reason provided by the prosecutor prior to exercising a peremptory challenge to excuse Juror No. 134 was racially neutral.
 {¶ 40} Appellant's first assignment of error is overruled.
 II. {¶ 41} In his second assignment of error appellant contends that the testimony of prior acts of a sexual nature between himself and the alleged victim that had occurred four years prior to the incidents for which he was indicted were inadmissible as they did not come within the scope of Evid. R. 404 and R.C. 2945.59, which permits, for limited purposes, proof of other acts of a defendant in a criminal case. Specifically, testimony by the alleged victim that appellant would attempt to touch her over her clothes and sometimes under them, touching her thighs, chest and between her legs. (T. at 128).
 {¶ 42} At the outset we note that appellant's counsel did not object to the admission of this evidence. Because no objection was made to the testimony at the trial level, we must review this error under the plain error standard.
 {¶ 43} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 44} In U.S. v. Dominguez Benitez (2004), 524 U.S. 74,124 S.Ct. 2333 the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. SeeArizona v. Fulminante, 499 U. S. 279, 309-310 (1991) (giving examples).
 {¶ 45} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. SeeKotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights" . . . an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.
 {¶ 46} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.' "State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quotingState v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 47} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Supreme Court held in addition to those reasons listed in the Rule, evidence of other bad acts may be admissible to prove identity. However, because Evid. R. 404(B), and R.C. 2945. 59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict, Broom, syllabus by the court, paragraph 1.
 {¶ 48} In State v. Burson (1974), 38 Ohio St.2d 157, 311 N.E.2d 526, the Ohio Supreme Court made the following observation: "[n]owhere do the words `like' or `similar' appear in the statute. Prosecutors and trial courts should be particularly aware that evidence of other acts of a defendant if admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question." Id. at 158,311 N.E.2d at 528. The Burson court further noted "[w]hen the purpose of evidence of other acts is to show the absence of mistake or accident on the part of the defendant in committing the offense charged, it must be shown that a connection, in the mind of the defendant, must have existed between the offense in question and the other acts of a similar nature. See State v. Moore (1948), 149 Ohio St. 226, 78 N.E.2d 365. The other acts of the defendant must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant in showing the defendant acted in the absence of mistake or accident." Id. at 159, 311 N.E.2d 528-29.
 {¶ 49} The admission of prior bad acts is deemed harmless unless there is some reasonable probability the evidence contributed to the accused's conviction, City of Columbus v. Taylor (1988), 39 Ohio St.3d 162,529 N.E.2d 1382.
 {¶ 50} Without extended discussion of the evidence, we should add that we believe the introduction of the other acts could not be considered truly prejudicial in any event. Even if admission of the prior acts could be considered erroneous, we would conclude, from a review of the entire record, that such error would be `harmless beyond a reasonable doubt.' Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824;Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726;Schneble v. Florida (1972), 405 U.S. 427, 92 S.Ct. 1056.
 {¶ 51} Based upon the record, we find that appellant has failed to demonstrate that a plain error affected his substantial rights.
 {¶ 52} Appellant's second assignment of error is overruled.
 III. {¶ 53} In his third assignment of error, appellant maintains that his conviction is against the weight and the sufficiency of the evidence. We disagree.
 {¶ 54} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 55} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 56} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 57} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 58} In the case at bar, appellant was convicted of Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04 which provides "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard".
 {¶ 59} R.C. 2907.01(A) provides "'Sexual conduct'" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 60} Appellant is not contesting the evidence presented regarding his knowledge of the victim's age or that the victim was not his spouse. Appellant asserts the state failed to provide sufficient evidence showing that he engaged in sexual conduct with the victim.
 {¶ 61} Through the testimony of the victim, the state provided evidence regarding the three incidents that, when viewed in a light most favorable to the prosecution, were sufficient for a reasonable person to find appellant guilty of unlawful sexual conduct with a minor.
 {¶ 62} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of unlawful sexual contact with a minor.
 {¶ 63} We hold, therefore, that the state met its burden of production regarding each element of the crime of unlawful sexual contact with a minor and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 64} Appellant and the victim both testified regarding the events that occurred in this case. The victim claimed they engaged in sexual intercourse. Appellant testified that he confessed out of fear for his safety from members of the victim's family. We do not find that the jury created a manifest miscarriage of justice in choosing to believe the victim's version of the events.
 {¶ 65} Although appellant cross-examined the State's witnesses in an attempt to show the inconsistencies in the various statements and further in an attempt to demonstrate that the events did not occur, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence".State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citingState v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61,67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667,607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 66} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant committed the crime of unlawful sexual contact with a minor. R.C. 2907.04(A). Accordingly, appellant's conviction for Unlawful Sexual Contact with a Minor was not against the manifest weight of the evidence.
 {¶ 67} Appellant's third assignment of error is overruled.
 IV. {¶ 68} In his fourth assignment of error, appellant claims that his conviction should be reversed because of juror misconduct. Specifically, appellant claims that two questions of the jurors, which were not answered, demonstrate some dispute over the facts. This argument is without merit.
 {¶ 69} Appellant did not object or move for a mistrial. Accordingly, this error is subjected to a plain error review.
 {¶ 70} The jury is obligated to decide a case solely on the evidence, and any communication or contact outside the courtroom or jury room about the matter at trial between a juror and another person, and any independent inquiry or experiment by a juror concerning the evidence or the law, constitutes juror misconduct. State v. Taylor (1991),73 Ohio App.3d 827, 831, 598 N.E.2d 818. Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct. Id.
 {¶ 71} In the present case, it is apparent that jury posed two questions at the break between the close of testimony and closing arguments. The questions were renewed sometime between the beginning of deliberations and the rendering of the verdict. The questions asked whether the victim had a history of promiscuity and the results of the [victim's] hospital stay. (T. at 305). The questions were inappropriate and the trial court refused to answer them. Appellant's trial counsel agreed that the questions should not be answered. (Id. at 305-306). The trial court also determined that the jury did not require responses to the questions before agreement on a verdict. (Id.).
 {¶ 72} The jury also informed the bailiff that while they had reached a verdict in less than one hour, they intended to "stall" delivering the verdict if it meant they would have to return for jury duty. However, a short time later the jurors further informed the bailiff that "they have a verdict regardless of whether they have to come back or not." (T. at 307).
 {¶ 73} The questions and comments are not the result of an independent inquiry by the jury, and was not the result of any communication or contact with one of the parties to the litigation. Thus, the error in the instant case is more appropriately defined as an irregularity in the proceedings, and appellant must demonstrate that the error prevented him from having a fair trial. State v. Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136.
 {¶ 74} In United States v. Gaitan-Acevdo (1998), 148 F.3d 577, the Court of Appeals for the Sixth Circuit held that reversal was not warranted on grounds of juror misconduct, even though evidence suggested that jurors had discussed the case, contrary to court's instruction, by commenting on the number of cars owned by one defendant and the government's style of examination, and joking about convicting the defendant so they could go home, given that jurors' comments did not evidence actual bias. Id. at 590-91. The Court noted "[a]bsent additional evidence, whether concrete or circumstantial, and assuming the district court was in the best position to assess the significance of the jurors' comments, we cannot accept the defendants' speculation about juror statements as proof of impartiality". Id.
 {¶ 75} In the case at bar, the trial judge prepared a written response informing the jurors that they had all of the evidence and that it would not answer the questions. (T. at 304-306). Both counsel agreed to the trial court's response. The comments concerning the jurors desire to be released from further jury duty came after the jury had reached its verdict. Appellant fails to explain how the comments could have affected the verdict as it had already been reached.
 {¶ 76} Appellant has not demonstrated that he was denied a fair trial by the conduct of the jurors.
 {¶ 77} Appellant's fourth assignment of error is overruled.
 V. {¶ 78} In his fifth assignment of error, appellant argues that he was denied effective assistance of trial counsel.
 {¶ 79} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 80} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 81} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 82} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 83} Without specifically identifying in the record purported instances of error, appellant asserts that trial counsel's failure to object to "hearsay statements and conclusions in a report of a psychologist which was admitted as a joint exhibit" constitutes ineffective assistance of counsel. In the case at bar, appellant does not specifically identify any statement contained in the report of the psychologist that he contends was prejudicial to him. The sole reference to statements contained in the report is that the victim was "plagued by guilt and anxiety as a result of her involvement in these activities." (Appellant's Brief at 3; T. at 213-14). Because appellant fails to properly reference portions of the record supporting his claim that defense counsel's failure to object constitutes error, appellant cannot demonstrate these claimed instances of error. See Daniels v.Santic, Geauga App. No. 2004-G-2570, 2005-Ohio-1101, at ¶ 13-15. See, also, App.R. 12(A) (2) and 16(A) (7); Graham v. City of Findlay PoliceDept. (Mar. 19, 2002), Hancock App. No. 5-01-32 (stating that "[t]his court is not obliged to search the record for some evidence of claimed error. * * * Rather, an appellant must tell the appellate court specifically where the trial court's alleged errors may be located in the transcript"); State ex rel. Physicians Commt. for ResponsibleMedicine v. Ohio State Univ. Bd. of Trustees, 108 Ohio St.3d 288,2006-Ohio-903, at ¶ 13; State ex rel. Petro v. Gold,166 Ohio App.3d 371, 2006-Ohio-943, at ¶ 94, appeal not allowed, 110 Ohio St.3d 1439,2006-Ohio-3862, reconsideration denied, 111 Ohio St.3d 1418,2006-Ohio-5083; Porter v. Keefe, Erie App. No. E-02-018, 2003-Ohio-7267, at ¶ 109-113.
 {¶ 84} In the alternative, we would note that the record in the case at bar clearly evidences trial counsel's tactical decision to submit the report of the psychologist. (T. at 197-218). Trial counsel acknowledged that "[t]here is bad and good in that report." (T. at 215). Counsel further stated: "Judge, life is a double edged sword in this case." (Id. at 216-217).
 {¶ 85} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v.Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217. TheSixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843;Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305
(1986); Strickland, supra, at 689, 104 S.Ct. 2052; United States v.Cronic, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)."Yarborough v. Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 86} The sole statement contained in the psychologist's report cited by appellant is insufficient to demonstrate prejudice.
 {¶ 87} Appellant cites trial counsel's failure to object to other acts evidence as further evidence of counsel's ineffectiveness. In light of our disposition of appellant's second assignment of error, appellant was not prejudiced by his trial counsel's failure to object to evidence of other acts.
 {¶ 88} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor was the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 89} Appellant's fifth assignment of error is overruled.
 {¶ 90} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed. By Gwin, P.J., Farmer, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.