[Cite as *State v. Blackshear*, 2013-Ohio-77.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                          |
|------------------------|---|----------------------------------|
| STATE OF OHIO          | : | Hon. Patricia A. Delaney, P.J.   |
|                        | : | Hon. W. Scott Gwin, J.           |
| Plaintiff-Appellee     | : | Hon. John W. Wise, J.            |
|                        | : |                                  |
| -vs-                   | : |                                  |
|                        | : | Case No. 2012-CA-84              |
| CRAIG BLACKSHEAR       | : |                                  |
|                        | : |                                  |
| Defendant-Appellant    | : | O P I N I O N                    |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County Court of Common Pleas, Case No. 2012CR0122


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     January 14, 2013


APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

JOHN FERRERO
By: RONALD MARK CALDWELL     DEREK LOWRY
Stark County Prosecutor's Office     Crawford, Lowry & Associates
110 Central Plaza South, Ste. 510     116 Cleveland Avenue N.W.
Canton, OH 44702             Suite 800
                                   Canton, OH 44702-1732

*Gwin, J.,*

{¶1} Appellant Craig Blackshear ("Blackshear") appeals from the April 18, 2012 judgment entry of the Stark County Court of Common Pleas convicting him of Domestic Violence, a felony of the third degree.

## Facts and Procedural Background

{¶2} In 2012, the Stark County Grand Jury returned an indictment that charged Blackshear with one count of felony domestic violence. This charge arose from Blackshear assaulting his live-in girlfriend, M.S., which included choking her and holding a knife to her face. Blackshear pleaded not guilty to this charge, and the case proceeded to trial by jury in the Stark County Court of Common Pleas.

## The Trial

{¶3} During voir dire, the state exercised only two of their four possible peremptory challenges. Both of the challenges were used to remove African-American members of the venire. In response to defense counsel's challenges to the removal of these jurors pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69(1986), the state claimed its race neutral basis for removing the first individual was the fact that the potential juror had a felony conviction from 1971, and had been charged with domestic violence although the charge was later dismissed. The race neutral basis for striking the second individual was that he also had felony convictions from 1964 and 1972. The state noted that, despite its removal of two African-Americans from the venire, one African-American was seated on the jury.

### *The Testimony*

**{¶4}** On January 14, 2012, shortly after midnight, M.S. called 9-1-1 claiming Blackshear, her live-in boyfriend, had assaulted her. M.S. stated Blackshear had pushed her to the ground, choked her, and put a knife to her face. She then waited for Blackshear to fall asleep and left the house to call 9-1-1. She claimed Blackshear had assaulted her at different locations throughout the evening as they were drinking and smoking marijuana with friends. Prior to Blackshear falling asleep near midnight, M.S. did not attempt to get away from him or summons help, even though the violence allegedly lasted approximately four hours during which there were several occasions when she was separated from Blackshear.

**{¶5}** During the cross examination of M.S., defense counsel attempted to questioned her about why their argument escalated. M.S. stated that she called Blackshear an alcoholic and he responded by mentioning her abortion. The state objected to this line of questioning. Defense counsel reasoned that Blackshear's use of this sensitive subject would provide a possible motive for M.S. to lie about her allegations. The court sustained the objection and instructed the jury to disregard any mention of an abortion. Prior to closing arguments, defense counsel proffered that the purpose of this line of questioning was to establish that Blackshear's reference to the abortion precipitated M.S.'s call to 9-1-1, rather than the alleged assault.

**{¶6}** Canton Police Officer Michael Roberts responded to the 9-1-1 call. Officer Roberts met M.S. coming out of her car. The officer talked to her briefly so that paramedics could treat her. M.S. told Officer Roberts that Blackshear had assaulted her throughout the day, and that he was inside the house sleeping. M.S. let the officer into

the house, who then went to the bedroom and awakened Blackshear. Blackshear appeared drunk, according to Officer Roberts, but was cooperative. The knife that Blackshear used on M.S. was retrieved by Officer Roberts in the bedroom between a wall and the dresser, within eight feet from where Blackshear was sleeping. Officer Roberts noticed that M.S. was upset and timid. He also noticed marks on her arms, her neck area, as well as scratches and red marks on her upper chest area. Photographs of these marks were taken.

{¶7} M.S. also claimed that Blackshear told her he was going to rape her; however, he fell asleep before carrying out his threat. Although Officer Roberts stated that M.S. told him Blackshear threatened to rape her, there is no reference to this in the Officer's narrative police report. The Officer explained that M.S. did not want to file rape charges. M.S. did not seek medical care because of this incident. In letters she sent to Blackshear while he was in jail awaiting trial, M.S. expressed a desire to continue their relationship after this case concluded.

### *Verdict and Sentence*

{¶8} The jury found Blackshear guilty as charged in the indictment. The trial court, upon accepting the jury's verdict and convicting Blackshear of the charged offense, imposed a 36-month prison sentence.

### *Assignments of Error*

{¶9} Blackshear raises three assignments of error,

{¶10} "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO USE A PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY FASHION.

{¶11} "II. THE TRIAL COURT ERRED IN IMPAIRING APPELLANT'S RIGHT TO CROSS EXAMINE THE ALLEGED VICTIM.

{¶12} "III. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{¶13} A defendant is denied equal protection of the law guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which members of the defendant's race have been purposely excluded. *Strauder v. W. Virginia*, 100 U.S. 303, 305, 25 L.Ed. 664(1880); *State v. Hernandez*, 63 Ohio St.3d 577, 589 N.E.2d 1310(1992); *State v. Bryant*, 104 Ohio App.3d 512, 516, 662 N.E.2d 846(6th Dist. 1995). The "equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as the defendant will be unable to impartially consider the state's case against the defendant." *State v. Bryant,* 104 Ohio App.3d 516; *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69(1986).

{¶14} In his first assignment of error, Blackshear maintains that the trial court failed to conduct a proper constitutional analysis as outlined in *Batson v. Kentucky*, in determining that the state was not racially motivated in excluding two African-Americans from the jury through the use of peremptory challenges. See, *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 98, 676 N.E. 2d 872(1997); *State v. Toland*, 5th Dist. No. 2006-CA-0162, 2007-Ohio-644.

**{¶15}** Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test * * *." *Hicks v. Westinghouse Materials Co.,* 78 Ohio St.3d at 99, 676 N.E. 2d 872.

**{¶16}** In *Hicks,* the Ohio Supreme Court set forth the *Batson* test as follows:

The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, *certiorari denied* (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, *Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' Id. at 95, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. *Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409(1991).

*Hick,* 78 Ohio St.3d. at 98-99, 676 N.E.2d 872.

**{¶17}** Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834(1995) (*per curiam*); *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824(2006).

**{¶18}** Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem*, 514 U.S. at 766-767, 115 S.Ct. 1769, 131 L.Ed.2d 834. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. at 365, 111 S.Ct. 1859,114 L.Ed.2d 395; *State v.*

*Nash*, 5th Dist. No. 1995 CA 00024, 1995 WL 767987(August 14, 1995). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769, 131 L.Ed.2d 834; *Rice v. Collins,* 546 U.S. at 338, 126 S.Ct. 969, 163 L.Ed.2d 824.

{¶19} On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error. *Hernandez v. New York,* 500 U.S. at 364-366, 111 S.Ct. 1859, 114 L.Ed.2d 395. (Holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province'"). *Rice v. Collins,* 546 U.S. at 338, 126 S.Ct. 969, 163 L.Ed.2d 824.

{¶20} It is irrelevant how many minority jurors remain on the panel if even one is excluded because of race. *State v. Bryant,* 104 Ohio App.3d 512, 662 N.E.2d 846; *State v. Tuck* 80 Ohio App.3d 721, 724, 610 N.E.2d 591(10th Dist. 1992) (*Batson*, applicable even if there is only one African-American juror on the panel); *Jones v. Ryan*, 987 F.2d 960, 972( 3rd Cir. 1993); *United States v. David*, 803 F.2d 1567(11th Dist. 1986).

{¶21} In the case at bar, the prosecutor voluntarily explained her reasons for the peremptory strikes. *Hicks v. Westinghouse,* 78 Ohio St.3d at 100, 676 N.E. 2d 872; *State v. Hernandez,* 63 Ohio St.3d at 583, 589 N.E.2d 1310; *Hernandez v. New York, supra; State v. Nash, supra.* The state claimed its race neutral basis for the first individual was the fact that the potential juror had a felony conviction from 1971, and had been charged with domestic violence although the charge was later dismissed. The race neutral basis for striking the second individual was that he also had felony convictions from 1964 and 1972. Blackshear's attorney responded that each of the

jurors was African-American; her client was African-American; and that each juror indicated he or she could be fair and impartial. Trial counsel did not offer any further explanation to make her prima facie case as required in the first step of the *Batson* test. She did not refer to any statements made by the prosecutor that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive. Moreover, even if Blackshear had met his prima facie burden to go forward on the challenge, the prosecutor gave a race neutral reason for using a peremptory challenge against each juror.

**{¶22}** We do not find that the dismissals of juror 32 and juror 52 were in error and we find that the prosecutor's reason for using a peremptory challenge on juror 32 and juror 52 was racially neutral.

**{¶23}** Blackshear's first assignment of error is overruled.

II.

**{¶24}** In his second assignment of error, Blackshear maintains that the trial court should have permitted him to present evidence that he had insulted M.S. about a prior abortion, and that these insults gave her motivation to fabricate the domestic violence allegations.

**{¶25}** The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343(1987). Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman*, 5th Dist. No.1999CA00027,

2000 WL 222190(Feb. 14, 2000). Generally, all relevant evidence is admissible. Evid.R. 402.

**{¶26}** Every criminal defendant has a constitutional right to present a meaningful defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636(1986). However, this right does not engender an unfettered entitlement to the admission of all evidence. *U.S. v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413(1998).

**{¶27}** The Sixth Amendment of the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 353, 94 S.Ct. 1105, 39 L.Ed.2d 347(1974). That right, incorporated in the Fourteenth Amendment and therefore available in state proceedings under *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923(1965) includes the right to conduct reasonable cross-examination. *Davis*, 415 U.S. at 315-316, 94 S.Ct. 1105, 39 L.Ed.2d 347.

**{¶28}** Reasonable cross-examination includes not only the opportunity to impeach a witness,

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness* * *A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing

possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence Section 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [415 U.S. 317]". *Greene v. McElroy*, (1959), 360 U.S. 474, 496, 3 L.Ed. 2d 1377, 79 S.Ct. 1400.

*Davis*, 415 U.S. at 316-317, 94 S.Ct. 1105, 39 L.Ed.2d 347. *Accord, Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513(1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-679, 106 S.Ct. 1431, 89 L.Ed.2d 674(1986). A trial court can impose reasonable limits upon cross-examination,

It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is

effective in whatever way, and to whatever extent, the defense might wish.' *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292 (per curiam). (Emphasis in original).

*Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431, 89 L.Ed.2d 674.

**{¶29}** In determining whether the confrontation clause has been violated, the focus of the prejudice inquiry "must be on the particular witness, not on the outcome of the entire trial." *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431, 89 L.Ed.2d 674. In *Van Arsdall*, the United States Supreme Court held,

> We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness". *David v. Alaska*, supra, at 318, 94 S.Ct. 1105.

*Van Arsdall*, at 475 U.S. 680, 106 S.Ct. 1431, 89 L.Ed.2d 674; *See, also*, *Olden.* In *Van Arsdall*, the Court further explained,

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the

prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. *Harrington,* 395 U.S., at 254, 23 L.Ed. 2d 284, 89 S.Ct. 1726; *Schneble v. Florida*, 405 U.S. at 432, 31 L.Ed. 2d 340, 92 S.Ct. 1056.

*Van Arsdall*, 475 U.S. at 685, 106 S.Ct. 1431, 89 L.Ed.2d 674.

**{¶30}** Without a doubt, M.S.'s testimony was of great importance to the state's case. The testimony was not cumulative; M.S. was the only eyewitness to the events other than Blackshear. In the case at bar, the discovery of the knife in the bedroom where Blackshear was sleeping and the photographs of M.S.'s injuries lend credence to her claim that Blackshear had assaulted her, choked her and held a knife to her throat. In addition, Blackshear's counsel was permitted wide latitude in its cross-examination of M.S., including questioning her about her drinking and drug use the night in question and her opportunity to summon help from friends, neighbors and alleged witnesses at various points during the night. Counsel also cross-examined M.S. about her contact with Blackshear while he was in jail awaiting trial, including introducing letters M.S. had written to Blackshear during that time and questioning her about the contents of those letters. Counsel was permitted to show the circumstances surrounding the confrontation, including the substance of the argument between the two that eventually led to Blackshear resorting to violence.

**{¶31}** Upon review of the entire record, it is clear that there was ample testimony for the jury to consider M.S.'s credibility and motivation to fabricate the allegations. Any violation of Blackshear's confrontation rights was harmless beyond a reasonable doubt.

**{¶32}** Accordingly, Blackshear's right to confront his accuser pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were not violated.

**{¶33}** Blackshear's second assignment of error is overruled.

III.

**{¶34}** In his third assignment of error, Blackshear maintains that his conviction is against the manifest weight and the sufficiency of the evidence.

**{¶35}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; *see also McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 2010-Ohio-2720, 933 N.E.2d 296, ¶68.

**{¶36}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668.* Weight of the evidence concerns,

The inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.)

Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶37}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶38}** To find Blackshear guilty of Domestic Violence the trier of fact would have to find that he knowingly caused or attempt to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A) (3). R.C. 2901.22 defines "knowingly" as follows,

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶39}** "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412(1995).

**{¶40}** Blackshear does not dispute that M.S. was a ""family or household member." Further, M.S. and Officer Roberts Johnson each testified to the injuries visible on M.S. after the incident. Photographs of the injuries were submitted to the jury.

**{¶41}** We hold, therefore, that the state met its burden of production regarding each element of the crime of Domestic Violence and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Blackshear's conviction.

**{¶42}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶43}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. Accord, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such

inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. No. 02AP-604, 2003- Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra*.

In *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. *See Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶44}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury as the trier of fact was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost its way nor created a miscarriage of justice in convicting Blackshear of Domestic Violence.

**{¶45}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Blackshear had committed the crime of Domestic Violence.

**{¶46}** Blackshear's third assignment of error is overruled.

**{¶47}** The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. JOHN W. WISE

WSG:clw 1204

[Cite as *State v. Blackshear*, 2013-Ohio-77.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                     :

            Plaintiff-Appellee    :

-vs-                      :        JUDGMENT ENTRY

CRAIG BLACKSHEAR       :

       Defendant-Appellant  :        CASE NO. 2012-CA-84

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE