DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Wood County Court of Common Pleas, following a no contest plea which found appellant guilty on two counts involving illegal drug manufacturing and possession. Because we conclude that the trial court did not err, we affirm the judgment of the trial court.
 {¶ 2} Appellant, Kris Kerr, was charged with one count of illegal assembly or possession of chemicals for manufacture of drugs, in violation of R.C. 2925.041, and one count of aggravated possession of drugs, in violation of R.C. 2925.11. The charges stemmed from incidents which took place at a gas station in Wood County. Appellant moved to suppress information obtained as a result of a warrantless inventory search of the vehicle he had been driving. The following testimony and evidence was presented at the suppression hearing.
 {¶ 3} Appellant pulled into a BP gas station and parked in a parking space. After approximately 20 minutes, appellant had not exited the vehicle. A friend of the station attendant went out to appellant's vehicle, noticed him slumped over the steering wheel, and tapped on the glass. When appellant could not be roused, the attendant called Northwood police.
 {¶ 4} A police cruiser responded, parking behind appellant's vehicle. Officer Ryan Graves testified that appellant appeared to be unconscious. Graves also tapped on the glass several times, first with his hand, and then using his flashlight. Appellant finally opened his eyes, but was unable to roll down the window at the officer's request. Graves then opened the car door and asked appellant if he was "okay." Appellant gave Graves his identification information which was relayed to the dispatcher. Appellant also said that he had borrowed the car from a friend.
 {¶ 5} A second patrolman who had arrived at the scene ran the vehicle's license plate to determine ownership. Meanwhile, thinking appellant had a medical problem, Graves continued talking to appellant who kept falling asleep. Although the vehicle did not come back as stolen, an active Williams County arrest warrant for appellant was discovered. At that point, appellant was taken into custody, handcuffed, and placed in the back seat of Graves' cruiser. Graves stated that, since the vehicle did not belong to appellant, and no other driver was present to take possession of the car, it was Northwood police policy to tow the vehicle for safekeeping.
 {¶ 6} Graves also stated that, pursuant to police policy, he and the other officer began to do an inventory search of the entire vehicle. Under the driver's side seat, the officers found a small container with white powdery residue inside a larger clear plastic container. Another small container with a red substance was also found. When the officers opened the trunk they found a large white gas-type metal cylinder, along with a motorcycle battery charger, hoses, pumps, strainers, and decongestant tablets which contained pseudoephedrine. Based upon his training and experience, Graves testified that the items were commonly used in the production of methamphetamines.
 {¶ 7} Upon finding the cylinder, the officers asked appellant what was in it. Appellant responded that it contained anhydrous ammonia. Graves testified that anhydrous ammonia is extremely flammable and the cylinder in appellant's vehicle was not of the proper type. Concerned that the cylinder might cause safety concerns at the gas station or while being towed, the officers then called their captain and the local fire chief. Firemen arrived, inspected the cylinder, and advised that it was safe to tow the vehicle. Appellant was then taken to the police department where he was given his Miranda rights.
 {¶ 8} The trial court denied appellant's motion to suppress the evidence obtained during the inventory search. Ultimately, appellant pled no contest and was found guilty as to both counts. As to Count 1, illegal assembly or possession of chemicals for manufacture of drugs, the court sentenced appellant to a prison term of four years, suspended his driver's license for five years, and imposed a mandatory $5,000 fine. As to Count 2, aggravated possession of drugs, the court imposed an 11 month prison term, to be served consecutively to the sentence for Count 1 and to the prison term imposed out of Williams County.
 {¶ 9} Appellant now appeals from that judgment, arguing the following three assignments of error:
 {¶ 10} "First Assignment of Error.
 {¶ 11} "The trial court erred in denying the defendant's motion to suppress.
 {¶ 12} "Second Assignment of Error.
 {¶ 13} "The defendant was denied effective assistance of counsel.
 {¶ 14} "Third Assignment of Error.
 {¶ 15} "The imposition of consecutive and above the minimum terms of incarceration were contrary to law and unsupported by the record and findings."
 I. {¶ 16} In this first assignment of error, appellant asserts that the trial court erred in denying his motion to suppress.
 {¶ 17} When considering a motion to suppress, the trial court assumes the role of trier-of-fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Mills (1992), 62 Ohio St.3d 357, 366, citing to State v. Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Mills, supra. Accepting the facts as found by the trial court as true, the appellate court must then independently determine, as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Id.
 {¶ 18} The Fourth Amendment to the United States Constitution provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The state bears the burden of establishing that a warrantless search, which is per se unreasonable, is nevertheless reasonable pursuant to one or more exceptions to the Fourth Amendment's warrant requirement. Xeniav. Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus. An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of theFourth Amendment to the United States Constitution. Colorado v.Bertine (1987), 479 U.S. 367, 371; South Dakota v. Opperman
(1976), 428 U.S. 364, 367. This exception permits police to conduct a warrantless search of a vehicle in order to inventory its contents after the vehicle has been lawfully impounded.State v. Mesa (1999), 87 Ohio St.3d 105, 108-109. See, also,Opperman, supra.
 {¶ 19} The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. Opperman, 428 U.S. at 370, fn. 5. An inventory search generally serves three purposes: (1) it protects an individual's property while it is in police custody; (2) it protects the police against frivolous claims of lost, stolen or vandalized property; and (3) it protects the police from weapons.Mesa, supra, at 109. In order for an inventory search to be constitutionally valid, it must be "reasonable"; that is, it must be conducted in good faith, not as a pretext for an investigative search, and in accordance with standardized police procedures or established routine. State v. Hathman (1992),65 Ohio St.3d 403, paragraph one of the syllabus, citing to Opperman, supra, and Bertine, supra. The purpose of requiring a standardized policy or practice is to prevent the inventory search from being used as a ruse for general rummaging to uncover evidence of a crime. Hathman, supra, at 407, citing Florida v. Wells
(1990), 495 U.S. 1, 4.
 {¶ 20} Consequently, in determining whether an inventory search is valid, a court must determine whether the police "lawfully impounded" the vehicle. State v. Cole (1994),93 Ohio App.3d 712, 715. The evidence presented "must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy." State v.Wilcoxson (July 25, 1997), 2nd Dist. No. 15928.
 {¶ 21} Moreover, the reasonableness of an inventory search does not necessarily or invariably turn on the existence of alternative, less intrusive means. Illinois v. Lafayette
(1983), 462 U.S. 640, 647. See, also, Bertine, supra, at 741-42. "The real question is not what `could have been achieved,' but whether the Fourth Amendment requires such steps, * * *." Lafayette, supra. For example, a vehicle key, necessarily in the possession of the towing company, could open a locked trunk or compartment. See State v. Bogle (Oct. 12, 2001), 2d Dist. No. 18722. Thus, it may be reasonable to do an inventory search of these areas before surrendering the car and the key to the towing company, to make sure that the car's contents are properly accounted for and protected. Id.
 {¶ 22} In this case, the Northwood Police towing policy states that the police "may direct towing and/or impoundment for a number of legitimate purposes. * * * Movement of a vehicle to a secure location may be necessary to protect the public and to safeguard the vehicle and any property contained in it. * * *." In another section, the policy states that:
 {¶ 23} "Whenever a motor vehicle is towed at the request of police, the personal property contained in the vehicle shall be inventoried. The only exception is tow service requested at the scene of a traffic crash further known as public assistance towing. The inventory is considered a `police caretaking procedure,' and it is necessary for the protection of the owner's property to avoid police liability for loss of the property while the vehicle is in custody, and for safety reasons, i.e., to ensure that no explosive, flammable or otherwise hazardous devices or substances are present in the vehicle." Finally, a third section states that "The inventory should include an examination of the exterior of the vehicle. Any damage existing at the time of the tow should be noted. The inventory should also include the interior of the vehicle along with any compartments or containers. Personal property left in the vehicle should be noted. Also note any accessories such as radio, tape, or CD players."
 {¶ 24} When considered together, these sections of the Northwood policy provide an established procedure which permitted the officers to tow the vehicle appellant was driving. Appellant was not the owner of the vehicle and was being taken into custody. Although the owner was known, the police were not required to try to locate that owner prior to the decision to tow. The vehicle was parked in a gas station and, under the circumstances of appellant's arrest, the police had no way of knowing how long it would remain there before the owner might retrieve it.
 {¶ 25} In addition, the policy provides that, incident to the inventory of a towed vehicle, the police are to inspect the outside and interior of the vehicle, including any closed or "locked" areas. Therefore, prior to having the vehicle towed, the officers' inventory of the trunk was reasonable, since they had a key which would have been given to the towing company. Once the officers saw the cylinder, indicating the possibility of additional criminal activity, however, the better course of action would have been to stop the inventory search and call for a warrant. Nevertheless, under the particular circumstances in this case, the initial search of the trunk was appropriate, not only to protect the police and towing company liability, but also, to protect the public from items which may have been potentially dangerous, i.e., the anhydrous ammonia cylinder. Thus, the decision to tow the vehicle and then to conduct the inventory search was made substantially in accordance with standardized procedures of the Northwood Police Department.
 {¶ 26} In addition, nothing in the record indicates that the inventory search of appellee's vehicle was conducted in bad faith or for the sole purpose of investigation. Although we agree that the officers should have given appellant his Miranda rights at the time he was arrested and placed into the police vehicle, we cannot say that his statement regarding the contents of the cylinder prejudiced his case. The cylinder itself had already been lawfully discovered during the inventory of the vehicle. Even presuming that the delay in giving appellant his Miranda
warnings violated his constitutional rights, the contents of the cylinder would then have been discovered and was admissible, even without any statement by appellant. See State v. Perkins
(1985), 18 Ohio St.3d 193, 196 (under the inevitable-discovery doctrine, evidence obtained unconstitutionally is admissible if it "would have been ultimately or inevitably discovered during the course of a lawful investigation"). Therefore, despite the delay in giving appellant his Miranda rights, the police lawfully discovered the cylinder and the other items leading to the charges against appellant, the trial court properly denied appellant's motion to suppress.
 {¶ 27} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 28} In this second assignment of error, appellant claims that he was denied his right to effective assistance of counsel.
 {¶ 29} The United States Supreme Court devised a two prong test to determine ineffective assistance of counsel. Stricklandv. Washington (1984), 466 U.S. 668, 687. In order to demonstrate ineffective assistance of counsel, an accused must satisfy both prongs. Id. First, the defendant must show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution. Id. Second, he must establish that counsel's "deficient performance prejudiced the defense." Id. The failure to prove one prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. State v. Madrigal (2000), 87 Ohio St.3d 378, 389, citingStrickland, supra, at 697.
 {¶ 30} Scrutiny of counsel's performance must be deferential.Strickland, supra, at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is on the defendant. State v. Lott (1990),51 Ohio St.3d 160, 174. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland,
supra, at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, Lott, supra, for Ohio's adoption of the Strickland
test.
 {¶ 31} In this case, appellant primarily relies on proposed errors pertaining to the suppression hearing, including counsel's misapplication of chain of custody law and the failure to raiseMiranda issues. Since we have determined that the motion was properly denied under the inventory exception, any error associated with the suppression hearing is harmless. Even presuming for the sake of argument that counsel's performance was less than competent, appellant has failed to establish the reasonable probability of a different outcome in the proceedings. Therefore, since appellant cannot demonstrate the second prong of the Strickland test, his claim of ineffective assistance of counsel is without merit.
 {¶ 32} Accordingly, appellant's second assignment of error is not well-taken.
 III. {¶ 33} In his third assignment of error, appellant asserts that the trial court improperly imposed consecutive and more than minimum terms of incarceration which were contrary to law and unsupported by the record and findings. Appellant essentially argues that the trial court failed to comply with the requirements under R.C. 2929.19(B)(2) and R.C. 2929.14(E)(4), and that the findings related to seriousness and recidivism made pursuant to R.C. 2929.11 and 2929.12 were not supported by the record.
 {¶ 34} The Supreme Court of Ohio has held that R.C.2929.19(B)(2) and R.C. 2929.14(E)(4) are unconstitutional. Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-516, at ¶ 99. Therefore, according to Foster, trial courts are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences, and have full discretion to impose a prison sentence within the statutory range. Id. at ¶ 100.
 {¶ 35} In this case, the trial court did not specifically reference any of the statutes held to be unconstitutional byFoster. Rather, the court found, pursuant to "the sentencing factors as set forth in the Ohio Revised Code" and R.C.2929.13(B)(1)(g), that "the offense was committed as part of an organization of criminal activity," that "there was a risk of physical harm to other persons," and that appellant committed the offense while he was on release "from the custody of another court system." Therefore, insofar as the court failed to make any findings pursuant to R.C. 2929.19(B)(2) or R.C. 2929.14(E)(4), we conclude that the court committed no error. We will now determine whether the trial court properly considered the factors under R.C. 2929.11 and 2929.12.
 {¶ 36} R.C. 2929.14(A) provides that a court may impose a prison term from one to five years for a felony of the third degree, and from six to twelve months for a felony of the third degree. A sentence will not be disturbed absent a trial court's abuse of discretion. See Foster, supra, at ¶ 100. R.C.2929.12(A) provides that a court has:
 {¶ 37} "discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness or the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing."
 {¶ 38} In considering the factors in R.C. 2929.12, the court found that appellant's offense and the methamphetamines which were made as a result of his offense were part of an organized criminal activity and "caused serious physical harm to other people." The court further found that recidivism was likely, that appellant's genuine remorse was under some dispute, that appellant had not been rehabilitated and had not responded favorably in the past to sanction imposed for criminal conviction, and that appellant demonstrated a pattern of drug and alcohol abuse related to the offense for which he had not been treated or successfully treated.
 {¶ 39} Appellant argues that because the record did not support a finding that appellant's actions were part of organized criminal activity or that the offense posed a risk of physical harm to persons, the court's conclusion that the offense was more serious must be reversed. Although we agree that the record may not demonstrate that appellant's acts were part of organized criminal activity, this is not the only factor the court relied upon. Appellant purchased and transported a large quantity of anhydrous ammonia in an unapproved container in the trunk of his car, an act which had the potential for causing serious physical harm to many people. The fact that appellant may not have sold or provided methamphetamines to other people was not the only risk posed by his offense. Consequently, the trial court's finding that appellant's offense posed a risk of physical harm to persons was supported by the record.
 {¶ 40} Even presuming that these two findings were incorrect, however, such factors are not required. Under R.C. 2929.12, the court must only consider the listed factors, and "any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense." R.C. 2929.12(B). In this case, the trial court clearly considered the specifically listed statutory factors, but found that other factors applied as well. Prior to imposing this sentence, the court considered that appellant had been previously convicted of manufacturing drugs in another case out of Williams County, for which he was sentenced to two years in prison. While out on a furlough from that sentence, appellant failed to return to prison, resulting in the arrest warrant which caused his initial arrest in the present case. In addition, while out on furlough, appellant engaged in the same activity for which he had been convicted, i.e., manufacturing and using methamphetamines.
 {¶ 41} The court also noted that appellant had not responded positively after imposition of the prior prison term and that more than minimum sentences were needed to protect the public from appellant's future crimes. Appellant was sentenced to four years for Count 1, a third degree felony, and to 11 months for Count 2, a fifth degree felony, well within the statutory ranges allowed. Therefore, under the facts of this case, we cannot say that appellant has demonstrated by clear and convincing evidence that the trial court's sentence was contrary to law.
 {¶ 42} Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 43} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Singer, P.J., Parish, J., Concur.