DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, which, after a jury trial, found appellant Ronald Silvey guilty of two counts of rape and two counts of unlawful sexual conduct with a minor. The trial court sentenced appellant to serve non-minimum consecutive prison terms. For *Page 2 
the reasons that follow, this court affirms the judgment of conviction but remands the case for resentencing under State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 2} On October 7, 2004, appellant was indicted and charged with two counts of rape in violation of R.C. 2907.02(A)(1)(b), a first degree felony, and two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3), a third degree felony. The offenses occurred between September 2003 and June 2004.
 {¶ 3} At trial, the state called C.H., the alleged victim to testify. At the time of trial, she was 14 years old, but at the time of the alleged offenses in September 2003 through June 2004, she was 12 and 13 years old. Appellant was C.H's mother's live-in boyfriend. C.H. testified that appellant was like a father to her and that, other than the times of the offenses, she enjoyed spending time with him.
 {¶ 4} C.H. testified that the first incident occurred when she was lying fully clothed in her mother's bed next to appellant. Appellant "rubbed on" C.H.'s vagina and breasts. A few days later, while C.H. was in her sister's bedroom, appellant came in and told C.H. to take off her pants. Appellant then had vaginal sexual intercourse with C.H. for the first time. C.H. testified that "it hurt" and that appellant told her to keep it a secret.
 {¶ 5} C.H. testified that appellant engaged in vaginal sexual intercourse with her on more than five additional occasions. She also testified that appellant put his penis in her mouth on two occasions. *Page 3 
 {¶ 6} The first person C.H. told about these incidents was an acquaintance, S.P., who happened to be the daughter of one of appellant's ex-girlfriends. C.H. also testified that S.P.'s mother told C.H.'s mother about C.H.'s allegations. Shortly thereafter, C.H.'s mother first questioned C.H. about the allegations in the presence of appellant. Fearing appellant because he was "yelling at" her, at that time C.H. denied that the incidents took place.
 {¶ 7} The final incident took place on C.H.'s last day of school in June. Appellant picked up C.H. at a friend's house to take her home. C.H. recalled that appellant was driving his blue van. C.H. testified that while appellant was driving he told C.H. to pull down her pants. Appellant put his finger in her vagina.
 {¶ 8} C.H. testified that after this last incident, she told her best friend, C.K., and her friend's mother, Janice K., about the incidents. C.H. testified that Janice K. advised her to tell her grandmother. Janice K. also listened in on a phone call that C.H. made to appellant. C.H. testified that during this phone call, appellant said that if C.H. told anyone about their sexual relationship, that he would just tell them C.H. was lying. He also reminded C.H. that it was supposed to be a secret.
 {¶ 9} Following Janice K.'s advice, C.H. told her grandmother about the incidents. In turn, the grandmother told C.H.'s mother.
 {¶ 10} The state's second witness was Janice K. Corroborating C.H's testimony, Janice K. testified that the victim told her that she had a sexual relationship with appellant. Janice K. also testified regarding the conversation between C.H. and appellant *Page 4 
that she heard on a very loud cordless phone. Janice K. testified that during that conversation, she heard appellant say to C.H. that since she had made the allegations before and recanted, nobody was going to believe C.H. Janice K. further testified that appellant also stated to C.H. that the sexual relationship was their secret and C.H. was not supposed to tell anyone.
 {¶ 11} Janice K. testified that she lived just two houses away from C.H. and her mother and that she would often see C.H. with appellant. Janice K. testified that she observed appellant chase, grab, and hug C.H. At one point, Janice K. testified that in her opinion, appellant looked at C.H. "like a hungry man looking at a pork chop rather than a man looking at a child." The trial court sustained defense counsel's objection to this comment. On cross-examination, Janice K. admitted that despite her feelings that appellant's relationship with C.H. was not appropriate, she had allowed her own minor daughter, C.K., to spend the night at C.H.'s house once or twice while appellant was in the home.
 {¶ 12} Next, the state called Cassandra V., C.H's mother. She testified that C.H. has attention deficit hyperactivity disorder for which C.H. has taken medication and has seen a counselor. Cassandra V. also admitted that C.H. had lied in the past about things unrelated to these incidents. However, by the time allegations of the incidents between appellant and C.H. were raised again by C.H.'s grandmother, Cassandra V. believed C.H.'s allegations and made a gynecological appointment for C.H. *Page 5 
 {¶ 13} The certified nurse midwife who examined C.H. in June 2004, testified that C.H's hymen was not intact. However, on cross-examination, the nurse admitted that a hymen can be in that condition from causes other than sexual intercourse.
 {¶ 14} The state concluded its case and at appellant's counsel's request, a bench discussion was held regarding the proposed testimony of Jodie H., a friend of appellant. Appellant's counsel proposed that Jodie H. was to testify both as an alibi witness and a rebuttal witness with regard to the June 2004 incident C.H. claimed occurred in appellant's van. Explaining the untimeliness of the notice of the alibi witness, appellant's counsel informed the trial court that Jodie H. had come forward with this information just two days before trial. The state argued that the untimely notice was "unduly prejudicial" to its case and requested exclusion of any testimony from the witness. The trial court ruled that the rebuttal testimony (that the van was inoperable on the day in question), but not the alibi testimony (that appellant was with Jodie H. on the day in question) would be allowed.
 {¶ 15} While on the stand, Jodie H. testified that her recollection was that appellant's van was not operable on the date in June 2004, that C.H. claims she was assaulted while appellant was driving it.
 {¶ 16} Appellant also called his friend, Brent P. to testify. Brent P. testified that he is currently incarcerated for receiving stolen property. He testified that in the past, he had worked on appellant's blue van. He testified that the van ceased to be operable by May 2004. Brent P. also testified that he was part of a conversation with Cassandra V. *Page 6 
and C.H. after appellant's arrest. During that conversation about the events leading up to appellant's arrest, Brent P. testified that Cassandra V. had to keep reminding C.H. about the dates and details surrounding C.H.'s disclosures.
 {¶ 17} After closing arguments and jury deliberation, the jury returned guilty verdicts on all counts.
 {¶ 18} At the sentencing hearing, the trial court ordered that appellant serve eight years as to the two counts of rape, and four years as to the two counts of unlawful sexual conduct with a minor. These sentences were ordered to be served consecutively for a total of 24 years of incarceration.
 {¶ 19} Appellant now appeals the judgment and sentence, setting forth the following assignments of error:
 {¶ 20} "I. The convictions were against the manifest weight of the evidence, due to the lack of credible witnesses who were not corroborated.
 {¶ 21} "II. The trial court erred on a number of evidentiary rulings, including the exclusion of alibi evidence. The trial court abused its discretion in making these rulings, which were highly prejudicial to Silvey and impacted his ability to have a fair trial.
 {¶ 22} "III. Silvey's sentence, which involved sentences that were not the shortest available, and imposed consecutively to each other, was unconstitutionally imposed."
 {¶ 23} In his first assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's *Page 7 
resolution of the conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 24} Appellant's arguments center on the credibility of the state's witnesses, in particular, the victim, C.H.. "Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. Toland, 5th Dist. No. 2006-CA-0162, 2007-Ohio-644 ¶ 56, citing State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Thompkins, paragraph four of the syllabus, superceded by constitutional amendment on other grounds as stated in State v.Smith (1997), 80 Ohio St.3d 89; State v. Miller (2002),96 Ohio St.3d 384, 2002-Ohio-4931, ¶ 38.
 {¶ 25} Although appellant cross-examined the state's witnesses in an attempt to show the inconsistencies in the various statements and further in an attempt to *Page 8 
demonstrate that the events did not occur, the jury was free to accept or reject any and all of the evidence offered by appellant and assess the witness' credibility. Appellant points to the fact that C.H. recanted her allegations when questioned by her mother while in appellant's presence. Certainly, the jury was free to accept the state's explanation for such behavior — that C.H. understandably felt threatened by appellant's presence at this inquisition. Further, the jury was free to accept the explanation that C.H. was a 13 year old child who was confused and conflicted about her relationship with appellant whom she regarded as a father figure — albeit a father figure who betrayed her trust.
 {¶ 26} Appellant also cites the testimony of Jodie H. that appellant's van was not operable on the date that C.H. claims she was assaulted while appellant was driving it. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Craig (Mar. 23, 2000), 10th Dist. No. 99AP-739, citing State v. Nivens (May 28, 1996), 10th Dist. No. 95APA09-1236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true.State v. Raver, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67; State v. Burke, 10th Dist. No. 02AP-1238, 2003-Ohio-2889, ¶ 15 citing State v. Caldwell (1992), 79 Ohio App.3d 667.
 {¶ 27} We conclude that the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational *Page 9 
trier of fact could have found beyond a reasonable doubt that appellant committed the crimes of rape and unlawful sexual contact with a minor. Accordingly, appellant's convictions were not against the manifest weight of the evidence. Appellant's first assignment of error is therefore, not well-taken.
 {¶ 28} In his second assignment of error, appellant asserts that the trial court erred in three ways that materially prejudiced appellant's defense. First, appellant contends that the trial court failed to offer the jury curative instruction as to Janice K.'s colorful testimony relative to her observations of the nature of appellant's apparently inappropriate relationship with the victim. Second, appellant argues that the trial court should not have excluded crucial alibi evidence on mere untimeliness grounds. Finally, appellant alleges that the trial court should have ordered a mistrial based on closing remarks by the prosecutor that appellant characterizes as violating his Fifth Amendment right not to testify.
 {¶ 29} Regarding the exclusion of the alibi testimony of Jodie H., Crim.R. 12.1 states:
 {¶ 30} "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of *Page 10 
proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
 {¶ 31} There is no record that appellant served any written notice on the prosecuting attorney of appellant's intention to claim alibi. Appellant's counsel only claimed that he added Jodie H. to the witness list "at the last minute." The prosecutors admitted they "were notified * * * of this witness" on the morning of the first day of the trial, but claimed that it would be unduly prejudicial to the state to allow the late alibi testimony.
 {¶ 32} Clearly, appellant did not comply with the specific written notice requirements of Crim.R. 12.1. "The issue of whether a defendant is permitted to present an alibi defense where he fails to follow the provisions of Crim.R. 12.1 lies within the sound discretion of the trial court." State v. Lewis (March 26, 1982), 6th Dist. No. L-81-211 citingState v. Smith (1977), 50 Ohio St. 2d 51; State v. Alexander (Aug. 6, 1993), 6th Dist. No. E-91-86. "Crim.R. 12.1 should be construed liberally and not be applied where no prejudice would accrue to the prosecution, where there is a demonstrable and excusable showing of mere negligence, or where there is good cause shown." State v. Smith (1985),17 Ohio St.3d 98, paragraph two of the syllabus.
 {¶ 33} In excluding the alibi testimony, the trial court noted that the dates of the alleged offenses had been known to appellant well in advance of trial. Further, we note that any prejudice to appellant's defense by this ruling was mitigated by Jodie H.'s permitted testimony rebutting C.H.'s recollection that appellant's blue van was operable in *Page 11 
early June 2004, when the last offense alleged occurred in that van as appellant drove it. Thus, the trial court did not abuse its discretion in excluding the alibi testimony since "the interest of justice" exception to the notice filing requirement was not met.
 {¶ 34} Regarding the allegedly prejudicial and inappropriate testimony by Janice K. concerning how appellant looked at C.H., appellant challenges the following exchange and the trial court's handling of it:
 {¶ 35} "Q. Other than the hugging and the chasing around, what other observation did you make between the two of them?
 {¶ 36} "A. The way he looked at her.
 {¶ 37} "Q. What do you mean the way he looked at her?
 {¶ 38} "A. The way he looked at her. He didn't look at her like she was a child.
 {¶ 39} "MR. GERKEN: Objection, Your Honor. Speculation. There's no foundation.
 {¶ 40} "MR. LINGO: This is her own observation. It's a present sense she's describing.
 {¶ 41} "THE COURT: Go ahead and follow it up.
 {¶ 42} "BY MR. LINGO:
 {¶ 43} "Q. What do you mean he didn't look at her as a child?
 {¶ 44} "A. In my opinion, he looked at her like a hungry man looking at a pork chop rather than a man looking at a child. *Page 12 
 {¶ 45} "MR. GERKEN: I tried to stop that. That was totally inappropriate. I'm going to ask it be stricken. I'm going to ask this witness not make anymore opinions.
 {¶ 46} "THE COURT: Any response?
 {¶ 47} "MR. LINGO: She's making an observation. She's subject to cross examination. It's an observation she's made.
 {¶ 48} "MR. GERKEN: It's an opinion, Judge.
 {¶ 49} "THE COURT: It is a statement. I'm going to sustain the objection. Let's just move on with the — and you are able to cross examine, but let's move on."
 {¶ 50} The trial court sustained appellant's objection in the presence of the jury. Thus, presumptively the jury understood that the testimony was not proper. To have possibly belabored the point with a curative instruction could well have drawn more damaging attention to the comment. The trial court did not abuse its discretion.
 {¶ 51} With regard to appellant's contention that the state's closing remarks violated his Fifth Amendment rights, the prosecutor summarized C.H.'s testimony regarding the incidents and then stated:
 {¶ 52} "And not one person has taken this stand and said that did not happen. Not one."
 {¶ 53} The prosecutor also stated:
 {¶ 54} "Look at the facts in the case, look at the testimony you've heard, and more importantly, look at the testimony that you didn't hear. No one took the stand and said this isn't true." *Page 13 
 {¶ 55} Appellant's counsel did not immediately object to these comments in open court in front of the jury. Instead, he waited until the state concluded its closing argument and then, during a bench discussion, objected to these comments and moved for a mistrial based on them. However, the trial court found that since the references were not made directly about appellant not testifying, the motion would be denied.
 {¶ 56} Generally, the granting or denying of a mistrial rests within the sound discretion of the trial court. State v. Graham (Feb. 4, 1994), 6thDist. No. S-93-13 citing State v. Sage (1987), 31 Ohio St.3d 173. Further, when considering whether certain remarks constitute prosecutorial misconduct, a reviewing court must determine "(1) whether the remarks were improper and (2) if so, whether the remarks prejudicially affected the accused's substantial rights." State v..Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, ¶ 142, citing State v.Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 57} A prosecutor's comments upon the accused's failure to testify are prejudicial and violate the Self-incrimination Clause of the Fifth
and Fourteenth Amendments to the United States Constitution.Graham citing Griffin v. California (1965), 380 U.S. 609; adopted byState v. Lynn (1966), 5 Ohio St.2d 106, paragraph one of the syllabus. However," * * *a prosecutor is allowed to comment upon the relative strength of the state's case, which includes commenting upon the fact that the state's case has not been rebutted." State v. Ferguson (1983),5 Ohio St.3d 160, 163. Comments directed to the strength of the state's evidence and not to the silence of the accused are permitted. Id. "The test for prosecutorial misconduct in an alleged reference to a defendant's failure to *Page 14 
testify is `whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v.Rager, 12th Dist. No. CA2003-05-132, 2004-Ohio-2485, ¶ 15 quotingState v. Webb, 70 Ohio St.3d 325, 1994-Ohio-425.
 {¶ 58} In State v. Hudson ( Mar. 29, 1990), 8th Dist. No. 56810, also a rape case, with regard to the victim's testimony, the prosecutor commented: "That testimony is uncontroverted and it is unchallenged. You haven't heard any testimony to contradict that." The court found that the comment was not intended nor was of such a character that the jury would necessarily construe it as a comment on the appellant's choice not to testify. Likewise, in the present case, we do not believe that the state's comments that "no one" testified contradicting C.H.'s testimony were intended or were of such a character that the jury would necessarily construe it as a comment on appellant's choice not to testify. Instead, it was in the nature of a comment upon the relative strength of the state's case, which included the fact that the state's case has not been rebutted.
 {¶ 59} Further, it is significant if the jury is given the proper instruction by the court not to consider the accused's failure to testify for any purpose. See Furguson at 163; Hudson. Such instructions can negate any potential prejudice arising from improprieties in the prosecutor's argument. See State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, ¶ 95.
 {¶ 60} In the present case, appellant's counsel offered curative-type comments in his closing remarks to the jury. Finally, in its jury instructions, the trial court included a *Page 15 
reminder of appellant's constitutional right not to testify and an admonition that the fact that appellant did not testify could not be considered for any purpose. Thus, the trial court did not abuse its discretion by failing to grant a mistrial.
 {¶ 61} We conclude that the trial court did not err to the material prejudice of appellant's defense. Therefore, appellant's second assignment of error is not well-taken.
 {¶ 62} In his final assignment of error, appellant contends that his case should be remanded for resentencing under State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the Supreme Court of Ohio found that various provisions of the Ohio sentencing statutes were unconstitutional because they required judicial factfinding in violation of a defendant'sSixth Amendment rights. The court severed those provisions including R.C. 2929.14(B) and (E)(4), which addressed non-minimum and consecutive sentences, and R.C. 2929.19(B)(2), which required certain findings by the trial court at the sentencing hearing. Relative to non-minimum sentences, R.C. 2929.14(B) provides:
 {¶ 63} "(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 or2907.05 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 64} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term. *Page 16 
 {¶ 65} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 66} Relative to consecutive sentences, R.C. 2929.14(E) states in pertinent part:
 {¶ 67} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 68} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 69} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. *Page 17 
 {¶ 70} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 71} R.C. 2929.19 (B)(2) provides in pertinent part relative to the sentencing hearing:
 {¶ 72} "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 73} "* * *
 {¶ 74} "(c) If it imposes consecutive sentences under section 2929.14
of the Revised Code, its reasons for imposing the consecutive sentences"
 {¶ 75} At the sentencing hearing, the trial court stated some reasons for the non-minimum, consecutive prison terms chosen on the two rape counts as follows:
 {¶ 76} "* * * Because these were committed while you were under community control sanction for murder, I'm going to find it necessary to protect and to punish you and protect the public, and because the crimes were committed while you were under these particular sanctions and undera post release control, and because of your criminal history of this, your prior offense that you're serving time for, that it's necessary that consecutive terms are needed to protect the public. * * *" (Emphasis added.)
 {¶ 77} With regard to the two counts of unlawful sexual conduct with a minor, the trial court stated: *Page 18 
 {¶ 78} "* * * Again, because this particular offense was committed while you were under a sanction, and because the harm in this particular instance in my opinion does not adequately protect or reflect the seriousness of the conduct with respect to this minor child and your relationship to this child, and because I find of that underlying murder charge you were out on parole for, a consecutive term is needed toprotect the public. * * *"
 {¶ 79} From the foregoing, we find, and appellee admits that "[t]he trial court clearly used the proverbial `magic language' that was once required before a court could impose non-minimum or consecutive sentences."[1] In other words, the trial court made judicial factfinding under R.C. 2929.14(B) and (E)(4) and R.C. 2929.19(B)(2) which were subsequently held unconstitutional in Foster. However, we disagree with appellee that under State v. Kerr, 6th Dist. No. WD-05-080, 2006-Ohio-6058, the present case need not be remanded for resentencing under Foster simply because the trial court did not mention the severed Revised Code section numbers. Kerr is distinguishable. InKerr, we found no Foster sentencing error. We noted that the trial court did not specifically reference any of the statutes held to be unconstitutional by Foster. Id., ¶ 35. We also stated that "insofar as the court failed to make any findings pursuant to R.C. 2929.1(B)(2) or R.C. 2929.14(E)(4), we conclude that the court committed no error." Id. However, in Kerr, the closest to a post-Foster prohibited finding made by the trial court was its observation that "appellant committed the offense while he was on release `from the *Page 19 
custody of another court system.'" This comment is not as close to the prohibited specific language of R.C. 2929.14(B) and (E)(4), that the trial court used in the present case. In the present case the trial court stated that consecutive sentences were "needed to protect the public" and the non-minimum sentences were imposed "because the crimes were committed while you were under these particular sanctions and under a post release control." See also State v. Jones, 6th Dist. No. L-05-1101, 2006-Ohio-2931, ¶ 6.
 {¶ 80} We find that our decision in State v. Brown, 6th Dist. No. S-06-009, 2006-Ohio-3985 supports our conclusion that the substantive prohibition on judicial factfinding outlined in Foster applies regardless of whether the sentencing court mentions any of the specific Revised Code section numbers that were severed by Foster. See alsoState v. Huff, 4th Dist. No. 06CA7, 2006-Ohio-5081, ¶ 27;Jones. In Brown, we found that because the trial court based its sentence on unconstitutional judicial factfinding, albeit under thewrong code section, the appellant's sentence was void and the case had to be remanded for a new sentencing hearing, pursuant to the mandate inFoster. Likewise, in the present case, because the trial court based its sentence on unconstitutional judicial factfinding, albeit withoutciting the code section, appellant's sentence is void and this case must be remanded for a new sentencing hearing, pursuant to the mandate inFoster. Appellant's third assignment of error is well-taken.
 {¶ 81} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. Appellant's conviction is affirmed, his sentence is vacated, and this cause is remanded for resentencing. Appellant *Page 20 
and appellee are ordered to each pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J. and William J. Skow, J. CONCUR.
[1] Appellee brief, P. 25. *Page 1